**Ronald E. FARISS, Relator,**

v.

**Arthur TIPPS, Respondent.**

**No. B–2350.**

Supreme Court of Texas.

Jan. 20, 1971.

Rehearing Denied Feb. 17, 1971.

Frank Maloney, Austin, for relator.

Jim Phagan, Dist. Atty., Wichita Falls, Jim D. Vollers, State's Atty., Austin, for respondent.

CALVERT, Chief Justice.

Relator Ronald E. Fariss seeks a writ of mandamus to compel a speedy disposition by the Honorable Arthur Tipps, District Judge, of a pending motion to revoke relator's probation. The petition will be conditionally granted.

On March 3, 1967 Relator Fariss pleaded guilty to an indictment of robbery by assault in cause No. 13,223–A in the 30th Judicial District Court of Wichita County, Texas. At that time he was assessed five years in the Texas Department of Corrections, but the imposition of the sentence was suspended and he was placed on probation pursuant to the provisions of Art. 42.12, Code of Criminal Procedure.

The judgment of the court placing relator on probation made that probation expressly "subject to the continuous supervision of this Court, and the terms and conditions of probation as hereinafter set out." The conditions included the following:

"The Defendant:

"1. Shall commit no offense against the penal laws of this State or of any other State or the United States, and shall violate no penal ordinances of any political subdivision of this State or any other State."

" * * * "

"8. Shall remain in Wichita County, and shall not, under any circumstances, leave said County except with the written consent of the Court or Probation Officer.

"9. Shall report in person or in writing to the assigned Probation Officer in and for Wichita County, Texas, (or his successor in office) at least once each 30 days or as directed by the Court or the Probation Officer."

" * * * "

"11. Shall, to the best of his ability, work at some suitable, gainful employment, or elsewhere."

" * * * "

"13. Shall pay a monthly Probation Service Fee of $8.00 through the Wichita County Probation Department, * * * "

On February 20, 1969 the District Attorney of Wichita Falls filed a motion to revoke relator's probation, setting forth the following:

"In violation of said terms and conditions of said probation, the said Defendant was convicted on the 7th day of November, 1968, in Cause No. 67759–D in the County Court of Wichita County, Texas, of the offense of failure to pay lodging; the defendant has failed to report regularly; the defendant has failed to advise his probation officer of his place of residence or employment; the defendant has failed to pay the monthly probation service fee as ordered by the court; the defendant has failed to secure and maintain gainful employment. * * "

In the months of February and March of 1969 relator was tried and convicted on multiple charges in the State of Virginia, and on April 10 he was placed in the Bland Correctional Farm, Bland, Virginia. In response to the warrant filed with the Virginia authorities, they have informed the Sheriff of Wichita County that relator will complete all sentences at Bland Correctional Farm on February 22, 1973, at which date he will be delivered to the City of Roanoke in response to four additional warrants charging relator with the issuance of fraudulent checks.

The record reflects that the detainer was filed against relator in early 1969 and

that he began seeking a hearing as early as September 1969. On October 6, 1969 he was advised by the District Attorney of Wichita County, "I will take your case under advisement." In response to subsequent trial requests, the District Attorney advised relator that he did not intend to make a decision concerning his case until relator was "ready to be released by the Department of Corrections there in the State of Virginia." When relator sought the assistance of this court in May, 1970, in obtaining a trial of the revocation proceeding, and this court made inquiry of the trial judge concerning proposed action, the judge responded that he was advised by the District Attorney that he had "no present plans to have the defendant brought back from Virginia for the revocation hearing" and did "not plan to release the detainer, unless required to do so." Further inquiry to the judge, with copy to the District Attorney, brought a response from the District Attorney giving it as his opinion that the State could not be required to obtain the presence of a prisoner of another jurisdiction for trial on criminal charges in this State, and concluding that it was his intention to leave the "detainer with the defendant in Virginia and take no action to return him to Wichita County until his release from the Virginia penitentiary."

On August 31, 1970, the respondent judge formally declined to set the proceeding for hearing. At no time in either preliminary correspondence or in the briefs filed in this court by the District Attorney and the State's Attorney representing the respondent judge has anyone suggested that the trial judge has discretion to order or deny a speedy trial, or that in denying one in this case he has done so in the exercise of a sound judicial discretion. To the contrary, the record as a whole indicates, quite clearly, that refusal of the judge to set the proceeding for trial is because of his belief that a defendant in a revocation proceeding is not legally entitled to a speedy trial under any circumstances.

Relator is entitled to issuance of the writ of mandamus he seeks if (1) the state constitutional right to a speedy trial is applicable to a proceeding to revoke probation, *or* (2) the right to a speedy trial as provided by the Sixth Amendment to the Constitution of the United States is a due process requirement made applicable to the States by the Fourteenth Amendment. We hold that he is entitled to the writ under each of the constitutional provisions.

Sec. 10, Art. I, Constitution of Texas, provides: "In all criminal prosecutions the accused shall have a speedy public trial by an impartial jury. * * *" It will be noted that the quoted provision guarantees to the accused in "all criminal prosecutions" (1) a trial by an impartial jury, (2) a public trial, and (3) a speedy trial. The question under the state constitutional provision, then, is whether a proceeding for revocation of probation is a "criminal prosecution" to which the constitutional guarantees apply.

■ The Court of Criminal Appeals has held that a revocation proceeding is not the type of "criminal prosecution" in which the defendant can demand a trial by jury. See Hood v. State, 458 S.W.2d 662 (Tex. Cr.App.1970) and Wilson v. State, 156 Tex. Cr.R. 228, 240 S.W.2d 774 (1951). For present purposes we may assume that those cases are correctly decided. The Court of Criminal Appeals definitely has *not*[1] held, however, that a defendant does not have a right to a public trial or a speedy trial in a probation revocation proceeding; and, the question being an open one, we should not hesitate to hold that these rights may be demanded in such a proceeding. Indeed, Art. 24, Texas Penal Code, would seem to require that holding. It provides:

"A 'criminal action' means the whole or any part of the procedure which the law provides for bringing offenders to justice; and the terms 'prosecution' and 'accusation' are used in the same sense."

1. Emphasis ours throughout unless otherwise indicated.

By this provision a "criminal prosecution" expressly includes a proceeding in which probation may be revoked and sentence imposed.

The purpose of the speedy trial provision of our constitution was articulated by this court in Ex Parte Turman, 26 Tex. 708 (1863), as follows:

"This constitutional provision was adopted upon general considerations growing out of experience of past times, and was intended to prevent government from oppressing the citizen by holding criminal prosecutions suspended over him for an indefinite time; and it was also intended to prevent delays in the customary administration of justice, by imposing upon the judicial tribunals an obligation to proceed with reasonable dispatch in the trial of criminal accusations."

If this announced purpose is to be implemented in all areas of the trial process in which an accused may suffer prejudice from unreasonable delay, the right to a speedy trial of a revocation proceeding should be recognized and enforced by this court. There is an indication in the opinion in Campbell v. State, 456 S.W.2d 918 at 921 (Tex.Cr.App.1970), that the Court of Criminal Appeals would not be loath to follow. The court there said:

"Since the earlier decisions of this Court concerning the nature of the revocation proceedings, it has now been held that while a state is not constitutionally required to provide for probation and revocation proceedings as a part of its criminal process any more than it is required to provide for appellate review, when it does, then due process and equal protection of the law is fully applicable thereto. [Cases cited.]

"It would indeed now be difficult to conclude that probation revocation hearings are not criminal proceedings 'where substantial rights of an accused may be affected.' [Cases cited.] The revoca-

tion proceedings cannot be isolated from the context of the criminal process. * * * *"

It is unthinkable that either this court or the Court of Criminal Appeals would hold that a defendant in a revocation proceeding could be denied a "public" trial and be subjected to a private and secret trial over his protest; and the reasons for holding that one cannot be denied a "speedy" trial are equally cogent. It would not make good sense to hold that one charged with a minor traffic violation, considered by neither the defendant nor third persons as a serious disqualification for employment, could demand and obtain a speedy trial, as we would be required to do, and yet that one denied employment opportunities because he is faced with years of imprisonment in a pending revocation proceeding, which may have no valid basis, could not demand a trial. Once we hold, as we do, that our constitution provides for a speedy trial in probation revocation proceedings, a trial judge does not have discretion to deny it. Such was the expressed and precise holding in Moreau v. Bond, 114 Tex. 468, 271 S.W. 379 (1925). The constitutional rights guaranteed by Sec. 10, Art. I of our constitution either exist or do not exist in this type of trial, and if they exist they may not be taken away in the name of discretion.

■ The Sixth Amendment to the Constitution of the United States provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed * * *." As is at once evident, the Constitution of the United States, like the Texas Constitution, guarantees to the accused "in all criminal prosecutions" (1) a trial by an impartial jury, (2) a public trial, and (3) a speedy trial. Thus, much of what has been said with respect to the right of a defendant in a probation revocation proceeding to a speedy trial under

state constitutional mandate is equally applicable here.

In urging that the Sixth Amendment speedy trial provision is not a due process requirement in probation revocation proceedings, counsel for respondent relies on two United States District Court decisions and an Illinois Court of Appeals' decision, all decided long before Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L. Ed.2d 1 (1967); Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969); Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed. 336 (1967) and Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970). We are convinced that these late decisions of the Supreme Court of the United States forecast a holding that refusal of a trial judge to set a probation revocation proceeding for trial is a denial of due process.

In Klopfer v. North Carolina, The Supreme Court of the United States held for the first time that the Sixth Amendment right to a speedy trial was applicable to the states. The Court held "that the right to a speedy trial is as fundamental as any of the rights secured by the Sixth Amendment," and stated that "[t]he history of the right to a speedy trial and its reception in this country clearly establish that it is one of the most basic rights preserved by our Constitution." And, in Smith v. Hooey, the Sixth Amendment right to a speedy trial was extended to persons imprisoned in another jurisdiction. Applicable here, the Court in *Hooey* reasoned that extension of the prior holding was required because "the possibility that the defendant already in prison might receive a sentence at least partially concurrent with the one he is serving may be forever lost if trial of the pending charge is postponed." As a further reason for the extension, the Court said: "And while it might be argued that a person already in prison would be less likely than others to be affected by 'anxiety and concern accompanying public accusation,' there is reason to believe that an outstanding untried charge (of which even a convict may, of course, be innocent) can have fully as depressive an effect upon a prisoner as upon a person who is at large." Taking the philosophy of these cases one step further, the Supreme Court held in Mempa v. Rhay, in a unanimous decision, that defendants in probation revocation proceedings are entitled to be represented by counsel as a matter of constitutional due process, rejecting the age-old argument that the defendants "were sentenced at the time they were originally placed on probation and that the imposition of sentence following probation revocation is, in effect, a mere formality constituting part of the probation revocation proceeding." The right to a speedy trial should be no less valuable and available. And see the concurring opinion of Mr. Justice Brennan in Dickey v. Florida, supra.

It is true that relator has many criminal charges against him, but the due process right to a speedy trial belongs as much to the worst of men as to the best of men; and while a well ordered society may righteously decry the "coddling of criminals," it cannot sanction deprivation of due process in the trial, conviction and sentencing of a single individual.

Inasmuch as we have concluded that relator is entitled to a speedy trial as provided in the constitutions of this State and the United States, the duties of respondent and of this court are clear. Assuming that relator will waive extradition, it is the duty of the respondent judge, absent prompt dismissal by the District Attorney, to set the revocation proceeding for trial at the earliest possible date consistent with the orderly performance of his other duties, but not later than sixty days from the date on which this judgment becomes final, and to order the issuance of all writs and processes and the payment of all expenses necessary to make his order for trial effective. Articles 1733 and 1734, Vernon's Tex.Civ.Stats., impose on this court the duty and obligation of requiring that respondent perform his duty as here

outlined. Article 1733 provides that The Supreme Court shall have power to issue writs of mandamus "agreeable to the principles of law regulating such writs" against any district judge. Article 1734 provides that The Supreme Court may issue the writ of mandamus "to compel a judge of a district court to proceed to trial and judgment in a cause agreeably to the principles and usages of law * * *." As examples of the exercise of our jurisdiction as conferred by Articles 1733 and 1734, supra, in various fact situations in both civil and criminal cases, see Lord v. Clayton, 163 Tex. 62, 352 S.W.2d 718 (1961) (Habeas corpus proceeding); Wright v. Broeter, 145 Tex. 142, 196 S.W.2d 82 (1946) (Election contest); Texas State Bd. of Examiners in Optometry v. Carp, 388 S.W.2d 409 (Tex.Sup.1965) (Declaratory judgment action); State v. Olsen, 360 S.W.2d 398 (1962) (To set aside void judgment of acquittal in criminal case and proceed to trial); Southland-Greyhound Lines v. Richardson, 126 Tex. 118, 86 S.W.2d 731 (1935) (Rendition of judgment on a jury verdict); State v. Anderson, 119 Tex. 110, 26 S.W.2d 174, 69 A.L.R. 233 (1930) (Setting for trial of criminal cases which had been wrongfully dismissed); Wilson v. Bowman, 381 S.W.2d 320 (Tex.Sup.1964) (Requiring a speedy trial in a criminal case). Relator has no other adequate remedy.

We assume that respondent will perform his duty as herein set out. Writ of mandamus will issue only if he refuses to do so.

REAVLEY, Justice.

We must all cherish the guarantees of our federal and state constitutions that anyone accused of criminal conduct shall be entitled to "a speedy public trial by an impartial jury." I certainly agree with the U. S. Supreme Court and the Texas Court of Criminal Appeals when they require the state to accord due process to one whose probation is sought to be revoked. Mempa v. Rhay, 389 U.S. 128, 88

S.Ct. 254, 19 L.Ed.2d 336 (1967); Campbell v. State, 456 S.W.2d 918 (Tex.Cr.App. 1970). And I must applaud this court when it insists that all of the rights of due process always belong to the worst as well as to the best of men.

However, I decline to join this court in issuing a constitutional fiat that requires a speedy hearing and decision on every motion to revoke probation regardless of circumstance or expense.

We dare not deny fundamental fairness to any man for fear of being said to "coddle criminals," but neither should we seek to join the fashion parade with our own form of fastidious solicitude for lawbreakers.

The Texas Court of Criminal Appeals has consistently held that the constitutional requirements for the trial to determine guilt or innocence do not necessarily apply to a proceeding to revoke probation. There is no right to a jury. Hood v. State, 458 S.W.2d 662 (Tex.Cr.App.1970); Wilson v. State, 156 Tex.Cr.R. 228, 240 S.W.2d 774 (1951). The review on appeal from a revocation proceeding is limited to a determination of whether the trial judge abused his discretion in revoking the probation. Stratmon v. State, 169 Tex.Cr.R. 188, 333 S.W.2d 135 (1960).

It has been the rule elsewhere that the constitutional right of speedy trial does not apply to a motion to revoke probation. Illinois v. Kostaken, 16 Ill.App.2d 395, 148 N.E.2d 615 (1957); United States v. Hollien, 105 F.Supp. 987 (W.D.Michigan 1952); United States v. Coles, 88 F.Supp. 150 (D.Oregon 1949).

The majority does not explain how the constitutional right of speedy trial by impartial jury requires a speedy hearing but not a jury in a revocation proceeding. We just say that the question is an open one, and so we require a speedy hearing. Nor does the majority attempt to explain why due process of law would in every case automatically require a speedy hearing.

182

The latter question is not relevant to the court, since it finds its answer in the speedy trial guarantee and does not reach the question of due process.

I see the problem of this court setting the time when the hearing on a motion to revoke must be held as presenting the general considerations of due process and as depending for its resolution upon the circumstances of the case. I see a vast difference between the trial of one under indictment and the judge's decision as to disposition of a probationer. Under the probation statute and the judgment after conviction, the trial judge assumes supervision and broad discretion over the probationer. When the conditions of probation are violated, that judge may simply make the conditions more restrictive or even continue the probation as before and ultimately clear the felony conviction from the probationer's record. On the other hand the judge may revoke the probation and impose sentence. In doing this he may choose to reduce the length of the sentence or he may impose the full term originally determined before probation began. He may order the sentence to run concurrently with other sentences, or he may order this sentence to be cumulative and begin at the expiration of outstanding sentences. Art. 42.12, Code of Criminal Procedure; Balli v. State, 460 S.W.2d 424 (Tex.Cr. App.1970); Creamer v. State, 430 S.W.2d 500 (Tex.Crim.1968); Ex parte March, 423 S.W.2d 916 (Tex.Crim.1968). Since he is given this degree of discretion over the future of the probationer, I believe it is realistic to entrust this judge with some discretion as to when he will make his decision. I would not order him to proceed to hearing and decision unless an abuse of discretion were shown.

The relator here shows nothing but a request for "a quick trial by Wichita County." Two years after he was admitted to probation on condition that he obey the law and remain in Wichita County, he was convicted on multiple charges and imprisoned in Virginia. Relator makes no suggestion that he is not the same person or that he has not violated the terms of his probation. What reason of fundamental fairness requires us to order that relator be brought from Virginia to Wichita County and that this judge make his decision and, if it is his decision to revoke, that he pronounce his sentence *now*? If there is a showing towards rehabilitation by relator at the time the decision must be made, Judge Tipps may choose to deny the revocation notwithstanding the violations. In this case Judge Tipps may well seek the advantage of maximum experience by Virginia with relator prior to making his decision. It may be to the benefit of relator and judge alike that Judge Tipps face and hear relator at a time closer to the date when a five year sentence would commence—if the decision is to be whether or not to impose that sentence in full.

I would deny the petition for mandamus.