**Marshall Dwayne WRIGHT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 68534, 68535.**

Court of Criminal Appeals of Texas, Panel No. 1.

March 10, 1982.

On Rehearing Oct. 20, 1982.

Paul Brauchle, Lawrence B. Mitchell, Dallas, for appellant.

Henry Wade, Dist. Atty. Ronald D. Hinds, Hugh Lucas, Chris Milner and Kathi Alyce Drew, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

Before ROBERTS, CLINTON and McCORMICK, JJ.

1. Restitution in a specified sum was ordered in one of the burglary cases, but consistently with the two year term of confinement the first monthly installment payment was made due on or before December 3, 1978.

2. One report is dated May 2, the other May 15; each recommended an arrest warrant be issued. In the record of the latter is a capias issued May 15, 1978, bearing the cause num-

## OPINION

CLINTON, Judge.

These are appeals from orders revoking probation. In a unique factual setting they present the recurring, troublesome question that arises when the trial court holds a hearing on the motion to revoke, finds that the probationer has violated a condition of probation, but does not immediately render a decision, purporting to take the matter under advisement, and subsequently orders revocation of probation—ostensibly on the initial finding, though the record reflects intervening developments that were not ventilated by motion and hearing.

All agree that December 3, 1976, appellant pleaded guilty and was found guilty of committing three offenses: one burglary of a motor vehicle and two burglaries of habitations. The trial court assessed punishment and sentenced appellant to two years confinement in the Texas Department of Corrections in the motor vehicle burglary case. Punishment in each habitation burglary case was assessed at five years confinement, but imposition of sentence was suspended and appellant was placed on probation for five years under the usual terms and conditions.[1] Appellant was released from confinement and began reporting to his probation officer in October 1977. He continued to report as directed, monthly, until he failed to report in April 1978.

First the probation officer in his written report and then the district attorney in his motion to revoke called to the attention of the court that single violation—failure to report during the month of April 1978.[2] A hearing was held May 19, 1978.

Appellant pleaded true, the district attorney presented testimony to prove the violation, whereupon appellant himself testified:

bers of each case. The lack of completed sheriff's return is explained by the fact that when appellant came down and reported in May, as particularly directed to do so, he was arrested and incarcerated.

As will be chronicled *post,* several capiases issued during the following months. Each, it is noted, commands that appellant be arrested

"I just want to say, you know, if you just reconsider—you know, give me one more chance, it will never happen again." He went on to say he had a scheduled job interview and the money to pay his probation fee. In a colloquy with the trial judge appellant tried to excuse his failure to report—he lived twenty to thirty miles away and did not have a car—but conceded that he could have reported if he had wanted to and put out the effort to; it ended with his plea for one more chance to "show my people and the Court that I just really want to get out there and make it," because he did not want to go back to the penitentiary. After a few questions by the State, the court found the violation alleged. Then came the pronouncement:

"This hearing will be passed. I will consider whether or not to send you back to the penitentiary, based upon your violation, Mr. Wright."

At this point the transcription of the notes of the court reporter relate: "(Whereupon, Court was adjourned, and on the 22nd day of June, 1978, the capias was withdrawn and the hearing passed generally by the Court...)."[3]

Chronologically in the record in one case is a capias bearing a date of issuance March 28, 1980.[4] The sheriff's return shows that the capias came to hand the same date and was executed "Dallas County Jail;"[5] the return is dated April 22, 1980.[6] In both cases there are docket sheet entries beginning April 22, 1980, resetting by agreement to April 25 and then, on that date, to May 1, 1980—for hearing. The May 1 handwritten entry is: "withdraw capias;" bearing the same date is a form "Notice of Disposition of a Felony Case" with the number of the case in which capias had been issued March 28. The stated disposition is:

"Prob Viol Capias Withdrawn Capias Recalled."[7]

There is no transcription of notes of the court reporter taken during any of these 1980 proceedings.

Substantially the same scenario was played out in early 1981. A capias was issued in both cases February 10, 1981—the last known address of appellant is said to be "Garland City Jail"—without any report of violation by the probation officer or motion to revoke by the State. Each came on the hand the same day and the return on both is stamped "IN JAIL." They were filed stamped by the receiving district clerk February 18, 1981. There are no docket entries from May 1, 1980 until February 13, 1981.

The transcription to which we have earlier alluded recites "(... and on the 13th day of February, 1981, the hearing in [numbered causes] was resumed, Court reconvened, and the hearing in the hereinbefore set out cause nos. was concluded on said date...)."[8]

and kept to answer "for violation of the conditions of probation" in a given cause. Each bears the signature of the trial judge.

3. On the trial docket sheet in each case is an altered stamped entry dated May 19, 1978 reading in pertinent part: "Court finds that the defendant has violated condition (*d*) of probation terms. This hearing passed ~~generally, capias withdrawn.~~ to June 16 1978 [underscored material is in handwriting]." This June 16, 1978 entry is: "Reset to June 22 '78." The June 22 entry is: "Hearing passed generally—capias withdrawn." The last two quoted entries are in handwriting. The sentence ultimately imposed allows appellant credit, inter alia, from "5–17–78 TO 6–22–78."

4. We have not found nor has our attention been directed to any place in the record where a contemporaneously filed and presented probation officer's report of violation or district attorney's motion to revoke appears; nor is there a docket entry pertaining to issuance of a capias.

5. Article 23.18, V.A.C.C.P., directs that the return of a capias state what disposition has been made of the defendant.

6. There is a stamped notation "Cleared NCIC" also dated April 22. The district clerk time stamped receipt of the returned capias April 23.

7. Again, in the sentence finally imposed appellant was given credit, inter alia, for the period from "4–22–80 TO 5–1–80."

8. The notation, made by the Official Court Reporter for the trial court, goes on to explain that notes of the proceedings on February 13 were taken by an acting court reporter, and a transcription of those notes are in the record under separate cover.

The transcription of the notes of the court reporter shows that the trial court called both cases, identified appellant and then engaged in the following pertinent dialogue with him, *viz:*

"THE COURT: You recall that on December the 3rd, 1976, you were convicted in this court of two cases of burglary of a habitation; assessed five years probated sentence in each case. Thereafter, on May the 19th, 1978, I had a hearing on a Motion to Revoke Probation in each of the cases; arraignment was waived; the pleading of true was entered in each of the cases to revoke the probation; evidence was presented; both sides closed all the evidence and I found, as a fact, that you had violated condition D of the probation terms, at that time. You recall that?

THE WITNESS: Yes.

THE COURT: And you recall having the hearing where you were found in violation and you admitted to not reporting, according to your instructions. Do you recall that?

THE WITNESS: Yes.

THE COURT: And you recall that I found you in violation of condition D of the probation terms, and passed the hearing to another date. At that point in time, I passed to another date, then I passed the hearing, generally, to consider the outcome, and now I'm going to finalize each of these hearings, at this time, and bring them both to a conclusion.

The orders heretofore entered in each of these causes, suspending imposition of sentence in each case and granting probation are revoked. Is there any reason under the law why you should not be sentenced at this time, in accordance with the judgement, today, in each case?

THE WITNESS: No, Your Honor."

Accordingly, the trial court pronounced sentence, and orally and in the written sentence allowed appellant his final credit from January 17, 1981.[9]

In · *Rogers v. State,* 640 S.W.2d 248 (Tex.Cr.App., No. 67,334, delivered June 17, 1981) a Court Panel divided over whether the facts of that probation revocation tied the case on the *Wester-Furrh*[10] line of authorities or the *Stanfield-Feldman* line.[11] The issue was whether the trial judge continued a defendant on probation or continued the hearing, and from its interpretation of developments reflected in the record the majority held that the facts "most nearly resemble the situation and the decision in *Furrh v. State,* supra." However, on rehearing we determined that the problem in this kind of a situation is "what process is due when the trial court finally takes away the probationer's liberty," rather than whether initially the court continued probation or hearing. *Rogers,* supra, (Opinion on Rehearing, delivered March 3, 1982).

Appellant asserts:

"The trial court committed error in revoking appellant's probation thirty-two months after the entry of the order finding appellant in violation of the terms and conditions of probation thereby denying him of the due process of law as guaranteed by the Fourteenth Amendment of the Constitution of the United States."

The State responds by pointing out that the Court has previously approved the procedure "whereby the trial court, upon making its finding that a violation has occurred, can continue the hearing, 'keeping before it the violations already proven and permitting the careful consideration of mitigating and exascerbating circumstances, including the subsequent conduct of the probationer, be-

---

**9.** The acting court reporter has it down as "1978," but on at least four other papers the correct date is as stated in the accompanying text.

**10.** *Wester v. State,* 542 S.W.2d 403 (Tex.Cr. App.1976); *Furrh v. State,* 582 S.W.2d 824 (Tex.Cr.App.1979); also, e.g., *Wallace v. State,* 575 S.W.2d 512 (Tex.Cr.App.1979).

**11.** *Stanfield v. State,* 588 S.W.2d 945 (Tex.Cr. App.1979); *Ex parte Feldman,* 593 S.W.2d 720 (Tex.Cr.App.1980);. also, e.g., *Traylor v. State,* 561 S.W.2d 492 (Tex.Cr.App.1978); *Sappington v. State,* 508 S.W.2d 840 (Tex.Cr.App.1974).

fore making a final decision whether to revoke.'" The internal quote is from *Ex parte Feldman,* supra; the State also relies on *Stanfield v. State,* both cited *ante* in note 11.

In *Feldman* and *Stanfield* the slim majority opinion in part justified the procedure it approved with the thought that the probationer "would consider himself to be 'getting a break,'" *Feldman,* at 722, and that trial court "gave appellant a break," *Stanfield,* at 947, note 1. As to this notion appellant now says that "the 'break' given Appellant cost him the due process of law." For reasons stated in *Rogers v. State,* supra, we agree.

■ In addition, it is observed that neither *Feldman* or *Stanfield* nor any other decision upon which they rely—principally *Traylor v. State,* 561 S.W.2d 492 (Tex.Cr. App.1978)—addressed a ground of error that implicated the Due Process Clause of the Fourteenth Amendment and the Due Course Clause of Article I, § 19 of the Constitution of the State of Texas.[12] However, *Wester v. State,* supra, makes clear that those constitutionalized doctrines of fundamental fairness do apply to probation revocation proceedings, *id.,* at 406.[13] So do *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) and *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).

■ In a context of probation as well as parole revocation, there are at once a personal "liberty" interest and a societal interest in not having either revoked on erroneous information or on an erroneous evalua-

tion of the need to revoke, given the breach of terms and conditions. *Id.,* at 484, 92 S.Ct. at 2601; *Scarpelli,* supra, U.S. at 785, 93 S.Ct. at 1761.[14] Society has a further interest that the probationer or parolee is afforded basic fairness: fair treatment in revocation proceedings will "enhance the chance of rehabilitation by avoiding reactions to arbitrariness." *Morrisey v. Brewer,* supra, U.S. at 484, 92 S.Ct. at 2602. These interests largely determine "what process is due," once due process applies to protecting against their loss. *Id.,* at 481, 484, 92 S.Ct. at 2600, 2601; cf. *Scarpelli,* supra, U.S. at 786, 790, 93 S.Ct. at 1761, 1763. And it is to that determination we now turn.[15]

■ First to recapitulate, May 19, 1978, appellant admitted and the court found that he had committed the sole violation alleged in failing to report during the month of April 1978. The hearing was "passed," appellant remained incarcerated until June 28, 1978, when the capias was withdrawn. Similarly in 1980 appellant was again held on a capias, confined from April 22, 1980 to May 1, 1980, when that capias was withdrawn or recalled. Then, January 17, 1981, appellant found himself detained in the Garland City Jail, to await the February 13, 1981 revocation proceeding.

Though the order revoking probation purports to be based on the thirty two month old finding of May 19, 1978 that appellant had once failed to report in April 1978, by quoting *Feldman* and citing *Stanfield,* the State does not pretend that is all there is to base the revocation. Given the issuance—over the signature of the trial judge—and

12. Though his ground of error mentions only the Fourteenth Amendment his argument invokes "all of the protection afforded him by the Texas Constitution," and our own Due Course Clause is a self-imposed protection of life, liberty, property, privileges and immunities, some of which the Fourteenth Amendment precludes every State from depriving.

13. Once probation is continued, though revocation would have justified, "the continuation cannot subsequently be arbitrarily withdrawn at the whim of the trial court or upon mere fact of an arrest. To hold otherwise would violate due process, due course of the law of the land and fundamental fairness."

14. "Both the probationer or parolee and the State have interests in the accurate finding of fact and informed use of discretion—the probationer or parolee to insure that his liberty is not unjustifiably taken away and the State to make certain that it is neither unnecessarily interrupting a successful effort at rehabilitation nor imprudently prejudicing the safety of the community."

15. *Whisenant v. State,* 557 S.W.2d 102 (Tex.Cr. App.1977) quotes the *minimum* requirements of due process listed in *Morrisey v. Brewer,* supra, and reaffirmed in *Scarpelli,* supra.

execution of capiases, the periods of incarceration to which appellant was subjected and credit allowed for that time in the sentence *in these cases,* the State must contend that there was "the careful consideration of mitigating or exacerbating circumstances, including the subsequent conduct of the probationer, before making a final decision whether to revoke," *Feldman, id.,* at 721.

What *Feldman* approved has now been rejected by this Court En Banc "because of its plain disregard of the minimum requirements of due process," *Rogers,* supra, at 254. When a probationer is returned to probation, here over a course of two years and eight months, probation may not be revoked without any determination of a new violation. As has been demonstrated, the very interests that require a revocation proceeding in the first place mandate that a record be made which includes "(f) *a written statement* by the factfinders *as to* the evidence relied on and *reasons for revoking probation," Morrissey v. Brewer,* supra, as quoted by the Court in *Whisenant v. State,* supra, at 104.[16] The right to appeal from a revocation order, granted expressly by Article 42.12, § 8(b), V.A.C.C.P., is of little moment, and appellate review hardly effective, when the record does not reveal the factual matters that informed the ultimate decision to revoke probation. *Rogers v. State,*[17] supra.

Accordingly, the ground of error is sustained and the orders revoking probation and imposing sentence are reversed, and the causes remanded.

Before the court en banc.

### OPINION ON STATE'S MOTION FOR REHEARING

McCORMICK, Judge.

These cases came before us on the State's motion for leave to file motion for rehearing. The record before us shows that on December 3, 1976, the appellant was found guilty of two cases of burglary of a habitation. Appellant received two probated five-year sentences. On May 18, 1978, the State filed a motion to revoke probation alleging that appellant had failed to report to the probation officer during the month of April, 1978. A hearing was held on the motion to revoke on May 19, 1978. Appellant pled true to the allegation. The trial court determined that appellant had violated the conditions of his probation as alleged. However, the hearing was passed while the court considered whether or not to send appellant to the penitentiary. On February 13, 1981, the hearing on the motion to revoke was reconvened and the trial court ordered appellant's probation revoked. Notice of appeal was given.

In a panel decision handed down on March 10, 1982, appellant's revocation of probation was reversed. The panel held that when the May 19, 1978 hearing was passed due process mandated that appellant's probation could not be revoked without a determination of a new violation.

We note, however, that appellant never raised any due process objection in the trial court. For the reasons set forth in *Rogers v. State,* 640 S.W.2d 248, the State's motion for rehearing is granted and the order of the trial court revoking the probation is affirmed.

ONION, P.J., and ROBERTS, CLINTON and TEAGUE, JJ., dissent.

---

**16.** All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

**17.** Though the dissenting opinion in *Rogers* criticized the rationale developed in the opinion of the Court, the due process principles actually applied in *Rogers* and by us in the case at

bar have generally been recognized and accepted by the Court. See *Whisenant v. State,* 557 S.W.2d 102, 104–105 (Tex.Cr.App.1977); *Wester v. State,* 542 S.W.2d 403, 406 (Tex.Cr.App. 1976); *Sappington v. State,* 508 S.W.2d 840, 841 (Tex.Cr.App.1974); and *Gamble v. State,* 484 S.W.2d 713, 715–716 (Tex.Cr.App.1972).