**Ex parte Monte Jay TARVER.**

**No. 01–84–0772–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 1, 1985.

Michael Ramsey, George Tyson, Jr., Houston, for appellant.

John B. Holmes, Jr., Harris County Dist. Atty., Eleanor M. McCarthy, Pat Shelton, Harris County Asst. Dist. Attys., Houston, for appellee.

Before EVANS, C.J., and COHEN and DUNN, JJ.

## OPINION

COHEN, Justice.

This is an appeal from a denial of pre-trial habeas corpus relief in a misdemeanor assault case. This court has jurisdiction because pre-trial appellate review of a double jeopardy claim is constitutionally required. *United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 102 S.Ct. 3081, 73 L.Ed.2d 754 (1982); *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977); *Ex parte Robinson*, 641 S.W.2d 552, 555 (Tex.Crim.App.1982).

On March 30, 1983, in cause no. 333,217 in the 179th Judicial District Court of Harris County, appellant was adjudged guilty of possession of cocaine and was granted probation for a period of ten years. On January 25, 1984, the State filed a motion to revoke probation alleging that appellant violated the terms of probation by committing the misdemeanor offense of assault. In addition, an information alleging the same offense, no. 751,294, was filed on January 19, 1984, in County Criminal Court at Law No. 2.

The first case heard was the motion to revoke probation in the 179th District Court. The State presented three witnesses on March 1 and 2, 1984, and then rested, at which time the court granted appellant's motion that the allegations be found "not true." The Judge stated, "I find the evidence in this case to be totally incredible." Only the State had presented evidence.

The State, on September 10, 1984, filed another misdemeanor information, cause no. 788,885, declared its intent to dismiss the original information, and stated that, "the accusation and charge alleged in both causes is the same."

On November 16, 1984, a hearing was held in County Criminal Court at Law No. 2 in cause no. 788,885 on appellant's motion to dismiss based on double jeopardy and on his application for habeas corpus relief. Identical stipulated evidence was offered on both the motion to dismiss and the application for habeas relief. The parties stipulated that:

1) The allegations forming the basis for the State's motion to revoke probation was the same allegation forming the basis for the State's allegations against appellant in cause nos. 788,885 and 751,294;

2) the State intends to prosecute the petitioner in cause no. 788,885;

3) the victim's testimony in cause no. 788,885 would be the same as that given in the hearing on the motion to revoke probation; (the statement of facts from the revocation hearing was admitted by stipulation); and

4) Judge I.D. McMaster, the judge of 179th District Court of Harris County, presided on March 1, 1984 at the hearing on the motion to revoke probation, at which time the State was afforded a full opportunity to present its evidence and that after hearing all of the State's evidence, Judge McMaster overruled the State's motion to revoke probation.

The appellant argues that the county court's denial of habeas corpus relief violated legal principles of double jeopardy, collateral estoppel, and due process of law.

In *Green v. United States*, 355 U.S. 184, 198, 78 S.Ct. 221, 229, 2 L.Ed.2d 199 (1957), the Court held:

The right not to be placed in jeopardy more than once for the same offense is a vital safeguard in our society, one that was dearly won and one that should continue to be highly valued. If such great constitutional protections are given a narrow, grudging application they are deprived of much of their significance.

Mr. Justice Black aptly described the purpose of the double jeopardy clause:

The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Id.* at 187–88, 78 S.Ct. at 223–224; quoted with approval in *Ex parte Robinson*, 641 S.W.2d at 554.

In *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), the Court held that the doctrine of collateral estoppel was "a safeguard firmly embedded in federal law," and "an established rule of federal criminal law" since at least 1916. The Court wrote:

"Collateral estoppel" is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.

*Id.* at 443, 90 S.Ct. at 1194.

The Court rejected the argument that the principle was one of narrow application. It said:

The federal decisions have made clear that the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality.

*Id.* at 444, 90 S.Ct. at 1194.

The Court did not find a constitutional basis for the doctrine in the broad language of the Fourteenth Amendment guaranteeing due process of law. Rather, the doctrine of collateral estoppel was held to have a more specific basis—the Fifth Amendment. The Court said:

The ultimate question to be determined, then, in the light of Benton v. Maryland ... is whether this established

rule of federal law is embodied in the Fifth Amendment guarantee against double jeopardy. We do not hesitate to hold that it is. For whatever else that constitutional guarantee may embrace ... it surely protects a man who has been acquitted from having to "run the gauntlet" a second time.

*Id.* at 445–46, 90 S.Ct. at 1195–1196 (citation and footnote omitted).

The facts in *Ashe* were that two trials had occurred for the robbery of different players in a poker game. In the first trial on the charge of robbing one of the players, the jury found the petitioner "not guilty due to insufficient evidence." The sole disputed issue in the trial was whether Ashe was one of the three or four men who had robbed the players. The defense offered no testimony at the first trial and all of its cross-examination was designed to bring out the weakness of the identification testimony. The only rational basis to explain the jury's verdict was that it did not believe that Ashe was one of the robbers.

Six weeks later Ashe was tried for the robbery of another player. Two of the State's weaker witnesses from the first trial gave much stronger and more certain testimony, and the weakest witness in the first trial did not testify. Ashe was convicted.

The Supreme Court stated what issues were, and were not, presented for decision:

The question is not whether Missouri could validly charge the petitioner with six separate offenses for the robbery of the six poker players. It is not whether he could have received a total of six punishments if he had been convicted in a single trial of robbing the six victims. It is simply whether, after a jury determined by its verdict that the petitioner was not one of the robbers, the State could constitutionally hale him before a new jury to litigate that issue again.

*Id.* 397 U.S. at 446, 90 S.Ct. at 1195.

The Court answered the question as follows:

No doubt the prosecutor felt the state had a provable case on the first charge and, when he lost, he did what every good attorney would do—he refined his presentation in light of the turn of events at the first trial. But this is precisely what the constitutional guarantee forbids.

*Id.* at 447, 90 S.Ct. at 1196 (emphasis omitted).

*Ashe v. Swenson* was a nearly unanimous decision. Only Chief Justice Burger dissented.

■ The State recognizes the doctrine of collateral estoppel as a part of the double joepardy clause of the United States Constitution. It argues, however, that the doctrine does not apply to this case in that appellant was not "in jeopardy" at the probation revocation hearing, because revocation hearings are "administrative in nature," according to *Davenport v. State*, 574 S.W.2d 73 (Tex.Crim.App.1978).

"Jeopardy denotes risk." *Breed v. Jones*, 421 U.S. 519, 528, 95 S.Ct. 1779, 1785, 44 L.Ed.2d 346 (1975). Appellant faced far greater risk in the probation revocation hearing than he now does in the county court assault prosecution. The maximum punishment he could have received in the probation revocation hearing was 10 years, compared to one year and a $2,000 fine in the county court case. Unlike the county court prosecution, in the revocation hearing appellant was subject to the following disadvantages: (1) he had no right to a jury trial; (2) he could be imprisoned on proof by a preponderance of the evidence, there being no requirement of proof beyond a reasonable doubt; (3) his conviction could rest solely on uncorroborated accomplice testimony, an uncorroborated confession, or hearsay; and (4) he was entitled to less notice of the charges against him, because a motion to revoke is not required to be as specific as an information and may be freely amended. *Frazier v. State*, 600 S.W.2d 271, 276 (Tex.Crim. App.1980) (op. on reh'g) (Onion, P.J., dissenting). There are no advantages that appellant enjoyed at his revocation hearing that are not available to him at trial on the

**348**

misdemeanor case. A realistic appraisal requires the conclusion that appellant was not only in jeopardy at his revocation hearing; he was then in greater jeopardy, because he faced a greater risk of imprisonment for a longer period of time than he faces in the county court prosecution.

The case at bar is a stronger one for the application of the principle of collateral estoppel than was *Ashe v. Swenson.* The county court assault charge is not merely similar to that tried on the motion to revoke; it is identical. And the State did not fail, as in *Ashe,* to prove guilt beyond a reasonable doubt. It failed to prove its allegation even by the lower standard of a preponderance of the evidence.

The doctrine of collateral estoppel has grown in importance since *Ashe v. Swenson* was decided. Prominent examples include *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 816 (Tex.1984); *see generally* Comment, *The Future of Offensive Collateral Estoppel in Texas,* 35 Baylor L.Rev. 291 (1983). Collateral estoppel has significant application to administrative proceedings, as recognized in *United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 421–22, 86 S.Ct. 1545, 1559–1560, 16 L.Ed.2d 642 (1966).

> Occasionally courts have used language to the effect that *res judicata* principles do not apply to administrative proceedings, but such language is certainly too broad. When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose.

This trend has been recognized in Texas. *Bryant v. L.H. Moore Canning Co.,* 509 S.W.2d 432 (Tex.Civ.App.—Corpus Christi 1974, no writ); *Railroad Commission v. Phillips,* 364 S.W.2d 408 (Tex.Civ.App.—Austin 1963, no writ). In both of these cases, courts declined to apply the principle of collateral estoppel, finding that the ad-

ministrative agencies were acting in administrative, not judicial, capacities. Although cited by the majority opinion in *Davenport, supra,* they nowhere suggest that a court acts in an administrative capacity, or in any other capacity other than judicial, when it hears testimony, cross-examination, and argument in order to decide whether a person who is out of jail should be put in jail.

Courts in other states have held that criminal prosecutions are barred by the doctrine of collateral estoppel when the same issues were resolved in the defendant's favor in a hearing before an administrative agency. *People v. Sims,* 32 Cal.3d 468, 651 P.2d 321, 186 Cal.Rptr. 77 (1982); *People v. Watt,* 115 Mich.App. 172, 320 N.W.2d 333 (1982); *District of Columbia v. Fisher,* 258 A.2d 456 (D.C.1969); *see also People v. Grayson,* 58 Ill.2d 260, 319 N.E.2d 43 (1974), *cert. denied,* 421 U.S. 994, 95 S.Ct. 2001, 44 L.Ed.2d 484 (1975).

The State relies primarily on *Settles v. State,* 403 S.W.2d 417 (Tex.Crim.App.1966) and *Davenport,* 574 S.W.2d 73. In *Settles,* the defendant pleaded former jeopardy because the same assault allegation had been made in proceedings to revoke his probation, and the court declined to do so. The Court wrote:

> [Appellant] alleged that the unsuccessful use of a charge of an assault to murder Mata in proceedings to revoke his probation constituted former jeopardy. The allegation in a motion to revoke probation that probationer has committed a particular offense when the motion is heard by the court does not constitute jeopardy and will not bar a subsequent prosecution for such offense. Especially is this true in the case at bar where the court declined to revoke probation. The court therefore properly declined to consider the plea.

403 S.W.2d at 418.

*Settles* is distinguishable from the case at bar, and, in addition, it is doubtful that the opinion therein is good law today. The opinion in *Settles* does not state that the trial court declined to revoke probation because the State failed to prove the allega-

tion. A judge hearing a motion to revoke probation has absolute discretion to deny it for any reason, even when the probationer pleads "true," the evidence of violation is stipulated, and a judicial confession is made. Such discretion is frequently exercised in favor of probationers. *See Wright v. State,* 640 S.W.2d 265 (Tex.Crim.App. 1982); *Hise v. State,* 640 S.W.2d 271 (Tex. Crim.App.1982); *Rogers v. State,* 640 S.W.2d 248 (Tex.Crim.App.1982). The opinion in *Settles* merely states that the State made "unsuccessful use of a charge" in the revocation hearing. It does not say what "use" was made of the charge or why it was unsuccessful. In the case at bar, the "use" made was a full hearing prosecuted to a verdict of "not true," based on the State's "totally incredible" evidence.

*Settles* was decided four years before *Ashe v. Swenson* and shows no recognition of the constitutional principles supporting the decision in *Ashe.*[1] In fact, *Settles* cites no authority, constitutional, statutory or common-law, for its holding.

The State also relies on *Davenport v. State, supra.* In *Davenport,* the defendant was charged with violating the conditions of probation by driving while intoxicated. After a hearing, the trial court denied the State's motion to revoke and signed an order stating that the evidence was insufficient to prove a violation.[2]

Eleven days later, the State filed a second motion to revoke, alleging the same facts. That motion was granted, and the judgment was affirmed by the Court of Criminal Appeals. The majority opinion held that a probation revocation hearing is "administrative in nature," and therefore, the double jeopardy clauses of art. 1, sec. 14 of the Texas Constitution and the Fifth Amendment to the United States Constitution did not apply to such hearings.

The facts of the present case differ from those in *Davenport.* It is undisputed that the double jeopardy clauses of the Texas and United States Constitutions apply to misdemeanor prosecutions in the county court. Appellant in the case at bar is seeking to terminate a criminal prosecution to which double jeopardy protection clearly applies, not a probation revocation or an "administrative" proceeding, to which, according to *Davenport,* such protections do not apply.[3]

Neither the majority nor the dissenting opinion in *Davenport* mentioned *Ashe v. Swenson,* or the doctrine of collateral estoppel. Since then, however, the Court has held that collateral estoppel applies to sentencing hearings. *Ex parte Augusta,* 639 S.W.2d 481 (Tex.Crim.App.1982); *Cooper v. State,* 631 S.W.2d 508 (Tex.Crim.App.1982). This was held to be constitutionally required in *Bullington v. Missouri,* 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981). Further, the Court of Criminal Appeals has recently held that a form of collateral estoppel applies in parole revocation hearings, at least in favor of the State. *See Ex parte Glenn,* 690 S.W.2d 578 (Tex.Crim. App.1985); *Ex parte Maceyra,* 690 S.W.2d 572, 575 (Tex.Crim.App.1985). In *Maceyra,* the Court stated:

> It is true that ... a parolee cannot relitigate issues determined against him in other forums such as when the revocation of parole is based on conviction of another crime. *Morissey v. Brewer,* 408 U.S. 471 at 492, 92 S.Ct. 2593, 2606, 33 L.Ed.2d 484 (1972).

---

**1.** *Settles* misstates the law in its conclusion that it is "especially ... true" that there is no jeopardy bar where probation is not revoked. The State need not be successful for jeopardy to attach. The result of the revocation hearing is immaterial. *Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977).

**2.** The majority opinion in *Davenport* does not mention the insufficiency of the evidence. The dissenting opinion does. 574 S.W.2d at 78.

**3.** Other cases relied on by the State are also distinguishable, because the proceeding sought to be barred was a probation revocation hearing, rather than a trial on a criminal offense. These include *Manning v. State,* 637 S.W.2d 941 (Tex.Crim.App.1982); *Shaw v. State,* 622 S.W.2d 862 (Tex.Crim.App.1981); *Mareno v. State,* 651 S.W.2d 812 (Tex.App.—Houston [1st Dist.] 1983, no pet.); *Holmes v. State,* 634 S.W.2d 762 (Tex. App.—Amarillo 1982, no pet.).

The due process requirements specified for parole revocations apply equally to probation revocations, *see Gagnon v. Scarpelli,* 411 U.S. 778, 782, 93 S.Ct. 1756, 1759, 36 L.Ed.2d 656 (1973), and *Rogers,* 640 S.W.2d at 252 n. 5, and the Texas procedure for revoking probation has been held to afford more protection than is required by the U.S. Constitution. *See Ex parte Glenn, supra,* at n. 4; and *Whisenant v. State,* 557 S.W.2d 102 (Tex.Crim.App.1977).

The *Davenport* opinion cites only two federal cases for its conclusion that the double jeopardy clause of the United States Constitution does not apply to probation revocations. Neither case supports the result reached in *Davenport.* Both were unanimous decisions significantly expanding the defendant's rights under the United States Constitution. The first, *Gagnon v. Scarpelli,* held that due process of law requires a hearing prior to the revocation of probation, because probation revocation, although not a stage of criminal prosecution, results in loss of liberty. 411 U.S. at 782, 93 S.Ct. at 1759. The Court held that a probationer is entitled to notice of the alleged violations, an opportunity to appear and to present evidence, a conditional right to confront adverse witnesses, an independent decision maker, and a written report of the hearing. 411 U.S. at 786–87, 93 S.Ct. at 1761–1762. Seven years earlier, the Court had recognized a Sixth Amendment right to counsel at a combined revocation and sentencing hearing, such as occurred in the case at bar. *See Mempa v. Rhay,* 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967). Nothing in *Gagnon v. Scarpelli* supports the conclusion reached in *Davenport* that a probation revocation hearing is "administrative" or that the double jeopardy clause does not then apply. On the contrary, the Supreme Court disregarded labels and imposed all of the traditional requirements of due process of law, because "probation revocation, like parole revocation, is not a stage of a criminal prosecution, but does result in a loss of liberty." 411 U.S. at 782, 93 S.Ct. at 1759. It held that, "... [A] probationer can no longer be denied due process, in reliance on

the dictum ... that probation is an 'act of grace.' " *Id.* at n. 4, 93 S.Ct. at 1760 n. 4.

The other federal case cited in *Davenport* was *Breed v. Jones,* 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975). The Court's unanimous opinion was written by Chief Justice Burger and joined by Mr. Justice Rehnquist. It held that double jeopardy prohibited the trial in district court of a juvenile previously found delinquent, but not punished, for the same act in juvenile court. The Court used extremely blunt, uncompromising language in its holding that the substance, not the form, of a proceeding controls its constitutional consequences, and it concluded that labels, presumably including the "administrative" label used in *Davenport,* are insufficient for this task. The Court held:

> We believe it is simply too late in the day to conclude, as did the District Court in this case, that a juvenile is not put in jeopardy at a proceeding whose object is to determine whether he has committed acts that violate a criminal law and whose potential consequences include both the stigma inherent in such a determination and the deprivation of liberty for many years. For it is clear under our cases that determining the relevance of constitutional policies, like determining the applicability of constitutional rights, in juvenile proceedings, requires that courts eschew "the 'civil' label-of-convenience which has been attached to juvenile proceedings," *In re Gault* [387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967)] ... and that "the juvenile process ... be candidly appraised."

421 U.S. at 529, 95 S.Ct. at 1785 (notes and citations omitted).

Despite this language and holding in *Breed v. Jones,* the majority opinion in *Davenport,* referring to one sentence in *Breed* considered out of context, relied on *Breed* as supporting its decision. Nothing in *Breed,* however, supports the result in *Davenport.* On the contrary, the Supreme Court in *Breed* stated:

> We deal here, not with "the formalities of the criminal adjudicative process," ...

351

but with an analysis of an aspect of the juvenile-court system in terms of the kind of risk to which jeopardy refers. Under our decisions we can find no persuasive distinction in that regard between the proceeding conducted in this case pursuant to [California's juvenile delinquency statute] and a criminal prosecution, each of which is designed "to vindicate [the] very vital interest in enforcement of criminal laws."

*Id.* at 531, 95 S.Ct. at 1786 (citations omitted). The Court added:

Jeopardy denotes risk. In the constitutional sense, jeopardy describes the risk that is traditionally associated with a criminal prosecution. . . . [T]he risk to which the term jeopardy refers is that traditionally associated with "actions intended to authorize criminal punishment to vindicate public justice." . . . Because of its purpose and potential consequences, and the nature and resources of the State, such a proceeding imposes heavy pressures and burdens—psychological, physical, and financial—on a person charged. The purpose of the Double Jeopardy Clause is to require that he be subject to the experience only once. "for the same offense." . . . "It is incarceration against one's will, whether it is called 'criminal' or 'civil.'"

*Id.* at 528–30, 95 S.Ct. at 1785–1786 (citations omitted).

*Breed v. Jones* is consistent with the Supreme Court's jurisprudence applying the Constitution based on substance, not form. Ninety-two years before *Davenport*, it was held that even forfeiture of property, based on the owner's offenses, though civil in form, was criminal in nature for Fifth Amendment purposes. *Boyd v. United States*, 116 U.S. 616, 634, 6 S.Ct. 524, 534, 29 L.Ed. 746 (1886), *cited with approval in United States v. United States Coin and Currency*, 401 U.S. 715, 718, 91 S.Ct. 1041, 1043, 28 L.Ed.2d 434 (1977). *Boyd* and *United States Coin* in-

volved the privilege against self-incrimination, rather than double jeopardy. Nevertheless, it is hard to conceive that one's liberty is entitled to less protection under the double jeopardy clause of the Fifth Amendment than is one's property under the self-incrimination clause of the same amendment.

*Breed v. Jones* held that a jeopardy bar may arise from proceedings not labeled criminal. Few proceedings are less "criminal" than a juvenile delinquency hearing. *Breed* held that, regardless of label, if there is a potential "risk," "stigma," and "incarceration," there is jeopardy.

The *Davenport* majority relied most heavily on *Hill v. State*, 480 S.W.2d 200 (Tex.Crim.App.1971), citing it five times. *Hill* was not a double jeopardy case.[4] However, while deciding a different issue, the Court wrote that probation revocations are administrative. *Hill* was a two-judge opinion. Of the court's five judges, one dissented, one concurred solely on the basis of waiver, and one did not participate. The last motion for rehearing was denied June 7, 1972, 22 days before the Supreme Court decided *Morissey v. Brewer*, requiring broad due process protections in parole revocations; 11 months before the Supreme Court decided *Gagnon v. Scarpelli*, requiring the same due process protection in probation revocations; and three years before *Breed v. Jones* held that double jeopardy protections may arise from non-criminal proceedings.

*Hill's* holding that probation revocations are administrative is dicta. The plurality opinion expresses two narrower grounds for decision, waiver and statutory construction. The issue discussed in *Hill* was obviously waived, as noted in every opinion voting for affirmance. 480 S.W.2d at 202 (Dally, Commissioner, original opinion approved by the Court); 480 S.W.2d at 203 (Odom, J., two-judge plurality opinion); 480 S.W.2d at 204 (Morrison, J., concurring). No other result was possible in light of

4. The sole holding in *Hill* was that, in the absence of both trial objection and a showing of harm, reversal was not required when a revoca-

tion hearing was conducted less than 10 days after the appointment of counsel.

Tex.Code Crim.P.Ann. art. 1.14 (Vernon 1977).

*Hill* relied almost exclusively on lower federal court authorities, and, without overruling it, ignored *Campbell v. State*, 456 S.W.2d 918 (Tex.Crim.App.1970), which was quoted in the original *Hill* opinion. The opinion in *Campbell* held:

> It would indeed now be difficult to conclude that probation revocation hearings are not criminal proceedings "where substantial rights of an accused may be affected." *Mempa v. Rhay....* The revocation proceedings cannot be isolated from the context of the criminal process.

456 S.W.2d at 921; quoted with approval in *Hill*, 480 S.W.2d at 202 (original opinion).

The *Hill* opinion made no mention of the Texas Supreme Court decision that probation revocation was a criminal prosecution within the meaning of the Sixth Amendment and Texas constitutional speedy trial provisions. *Fariss v. Tipps*, 463 S.W.2d 176 (Tex.1971). Even after the decision in *Hill*, the Court has continued to recognize the similarity between criminal trials and probation revocations. *See Russell v. State*, 551 S.W.2d 710, 714 (Tex.Crim.App. 1977); and *Whisenant v. State*, 557 S.W.2d 102, 104. In *Whisenant*, decided in 1977, *Hill* was ignored, and the Court unanimously approved the holding that:

> Probation in this state is supervised by the court and not by an administrative agency.... The proceeding to revoke probation, although not the same as a criminal trial, requires substantially all the same procedure.

557 S.W.2d at 104.[5]

Before the Supreme Court trilogy of *Morissey v. Brewer, Gagnon v. Scarpelli,* and *Breed v. Jones*, Presiding Judge Onion bitterly criticized the fiction that probation revocation proceedings are administrative. He wrote:

These holdings for too long have been used like a Mother Hubbard to cover all sorts of deficiencies and inequities in our revocation procedure. If there is no other answer to the contention raised on appeal, then these holdings are cited. *Hill*, 480 S.W.2d at 206 (Onion, P.J., dissenting).

In foreshadowing the Supreme Court's elevation of substance over form, he condemned the notion that constitutional rights can be determined by fixing labels:

> A conflict between the two courts of last resort [a reference to *Fariss v. Tipps, supra* ] is totally unnecessary to the proper disposition of this cause. The label to be placed upon such hearings is wholly immaterial to the issue presented.

*Id.*

*Hill v. State*, the pillar on which *Davenport* rests, is extremely weak authority for such a major constitutional holding. Every other case cited in the *Davenport* majority opinion is either distinguishable [6] or, like *Breed v. Jones*, supports the opposite result.

The State's final argument is that the principle of collateral estoppel does not apply, because, "no issue of ultimate fact has been determined by a valid and final judgment." The State does not suggest that the probation revocation hearing was invalid for any reason. Indeed, the hearing appears to have been valid and regular on its face.

The court's judgment in a probation revocation hearing is final when probation is revoked. It is then an appealable judgment. Tex.Code Crim.P.Ann. art. 42.12, sec. 8(b) (Vernon Supp.1985). In the instant case, the court's judgment of "not true" was a ruling on the merits of every issue raised in the State's motion to revoke. It left no issue unresolved.

---

**5.** The opinion was written by Commissioner Dally, who also wrote the original opinion in *Hill.*

**6.** None were cases where revocation was expressly denied because the State's evidence was insufficient. Thus, none discuss or apply the

doctrine of collateral estoppel. E.g., *Settles, supra; Bass v. State,* 501 S.W.2d 643 (Tex.Crim. App.1973). Denial of the State's motion to revoke does not imply that the State's evidence was insufficient. *See Wright, Hise, Rogers, supra.*

The cases relied on by the State, *Shumake v. State*, 502 S.W.2d 758 (Tex.Crim. App.1973) and *Ex parte Robinson*, 641 S.W.2d 552 (Tex.Crim.App.1982), held, respectively, that neither a grand jury no bill nor a finding of no probable cause at an examining trial can be a jeopardy bar to prosecution of a felony offense. Neither a grand jury no bill nor a discharge from an examining trial involves a hearing on the merits or has any attributes of a final judgment. Neither involves risk to the defendant which is comparable to the risk of a probation revocation proceeding.

■ We conclude that the doctrine of collateral estoppel, recognized in *Ashe v. Swenson*, bars the State from exposing appellant to jeopardy in the county court after it has once tried and failed, despite a full and fair hearing, to prove identical allegations. Consequently, we sustain appellant's ground of error.

The order denying the habeas corpus relief is reversed, and relief is granted. The information and the prosecution are dismissed.