Dennis Scott ARNOLD, Appellant

v.

The STATE of Texas, Appellee.

No. 01–95–00633–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 18, 1996.

Rehearing Overruled Feb. 29, 1996.

Stanley G. Schneider and J. Gray Trichter, Houston, for Appellant.

John B. Holmes, Jr., Alan Curry, and Brenda Doucette, Houston, for Appellee.

Before COHEN, HEDGES and TAFT, JJ.

## OPINION

COHEN, Justice.

Appellant, Dennis S. Arnold, appeals the denial of his application for writ of habeas corpus. The issue in this case is whether the administrative suspension of a driver's license for one arrested for driving while intoxicated (DWI) who fails a breath test constitutes a bar to prosecution for DWI on the basis of double jeopardy. We hold that it does not.

### Facts

On January 19, 1995, a Houston police officer clocked appellant driving 55 miles-per-hour in a 35–mile–per–hour zone in the 6800 block of the Southwest Freeway service road—a public place in Houston, Texas. Appellant's speech was slurred, his breath smelled of an alcoholic beverage and his coordination was poor while performing field sobriety tests. After being arrested, appellant submitted to an intoxilyzer test that showed an alcohol concentration of 0.11. Based on the test results, appellant was issued a notice of suspension, which informed him that his driver's license would be suspended, effective 40 days after the date he received the notice. It also informed appellant of his right to request a hearing to contest the suspension; appellant exercised his right.

A hearing was set, and appellant was notified of the date, place and time of the hearing, as well as the plaintiff's [1] intent to show, by a preponderance of the evidence:

> THAT, on or about 01/19/95 [appellant] had an alcohol concentration of a level specified in Article 6710*l* (a)(2)(B) [sic], V.T.C.S., now codified as Section 49.01 Texas Penal Code, while driving or in actual physical control of a motor vehicle in a public place.
>
> THAT, on or about 01/19/95 reasonable suspicion to stop [appellant] or probable cause to arrest [appellant] existed.

On March 13, 1995, an administrative judge conducted the hearing. Appellant and the Department were represented by counsel. A

---

1. The Department of Public Safety (the Department).

number of exhibits were introduced into evidence, including the notice of hearing, the statutory warning given upon requesting the breath test, a probable cause affidavit, a breath-test technical supervisor affidavit, notice of suspension, and the intoxilyzer printout. The Department presented one witness, the arresting officer. The administrative judge found that appellant's license should be suspended for 60 days and signed a written decision, including findings of fact and conclusions of law, the same day.

Meanwhile, on January 20, 1995, an information was filed against appellant in cause number 9502672, alleging that on January 19, 1995, appellant committed the offense of DWI by not having the normal use of his mental and physical faculties by the reason of the introduction of alcohol into his body and by having an alcohol concentration of at least 0.10%.

Appellant filed an application for writ of habeas corpus in cause number 9521473 requesting a double jeopardy bar of his DWI prosecution on the basis of already having been punished by the driver's license suspension. The trial court held a hearing and denied relief.

### The Administrative License Revocation Statute

Section 2(a) of article 6687b–1 provides:

If a person arrested for an offense under Article 6701*l*–1, Revised Statutes, or Section 19.05(a)(2), Penal Code, submits to the taking of a specimen of breath or blood and an analysis of the specimen shows the person had an alcohol concentration of a level specified in Article 6701*l*–1(a)(2)(B), Revised Statutes, the arresting officer shall serve notice of driver's license suspension personally on the arrested person.[2]

Article 6687b–1 also provides that a person who receives notice of suspension may request a hearing. The issue at the hearing is whether, by a preponderance of the evidence, the person had an alcohol concentration of 0.10 or greater while driving or in actual physical control of a vehicle in a public place, and whether reasonable suspicion or probable cause existed to stop or arrest the person. Tex.Rev.Civ.Stat.Ann. art. 6687b–1, § 7(a), (b) (Vernon Supp.1995).

### Double Jeopardy

In two points of error, appellant asserts that his right to be free from being twice placed in jeopardy of life or limb for the same offense is being violated by the information and complaint in cause number 9502672, charging DWI, where appellant has been punished previously by having his driver's license automatically suspended pursuant to article 6687b–1.

The double jeopardy clause of the fifth amendment[3] protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. *United States v. Halper*, 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989). This case involves the third of these protections. Appellant also relies upon article I, § 14 of the Texas Constitution. However, no separate analysis is necessary because the state constitution has been construed to give no greater protection than the federal constitution in regard to double jeopardy. *Stephens v. State*, 806 S.W.2d 812, 815 (Tex.Crim.App.1990).

The State contends there is no jeopardy bar for several reasons: 1) suspension proceedings are civil, not criminal, proceedings because the legislature has declared them to

---

**2.** Article 6701*l*–1(a)(2) has been recodified as section 49.01(2) of the Texas Penal Code. Both provisions define "intoxicated" as:

(A) not having the normal use of mental of physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body; or

(B) having an alcohol concentration of 0.10 or more.
Former Tex.Rev.Civ.Stat.Ann. art. 6701*l*–1(a)(2). Act of March 28, 1985, 69th Leg., R.S., ch. 10, sec. 1, 1985 Tex.Gen.Laws 375, *repealed by* Act of June 19, 1993, 73rd Leg., R.S., ch. 900, sec. 1.01, 1993 Tex.Gen.Laws 3586, 3704 (now codified as Tex.Penal Code Ann. § 49.01(2) (Vernon 1994)).

**3.** U.S. Const. amend. V.

be civil, 2) the suspension proceeding and the DWI prosecution are not for the same offense, 3) the specific holding in *Halper* is that a jeopardy bar results only from proceedings whose *sole* purpose is deterrence or retribution and license proceedings are not solely for deterrence or retribution, but also for remedial purposes. Appellant contends that suspension proceedings are at least partly deterrent/retributive and that is enough to constitute a jeopardy bar. We consider each of these contentions.

## I. Administrative license suspension is a civil proceeding because the legislature declared it so

The State contends that administrative license suspension is a civil proceeding, based on TEX.REV.CIV.STAT.ANN. art. 6687b–1, sec. 5(d) (Vernon Supp.1995), which provides that the determination is "a civil matter," is "independent of and is not an estoppel as to any matter in issue" in adjudicating a criminal charge arising from the same event, and "does not preclude litigation of the same or similar facts in a criminal prosecution." The State asserts this shows a plain legislative intent that administrative license suspension shall not constitute a jeopardy bar to subsequent criminal prosecution.

■ The State is undoubtedly correct. That is exactly what the legislature intended. The legislature has no power, however, to determine the scope of constitutional protections against double jeopardy simply by labelling a statute "civil." On the contrary, it is the judiciary's job to determine whether statutes are constitutional. "It is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 176, 2 L.Ed. 60 (1803). If the legislature could make statutes constitutional by declaring them so, then no statute would ever be held unconstitutional.

We are sure that the legislature respects the Texas and the United States Constitutions and never intends to pass a statute in violation of either; on the contrary, we are sure that the legislature acts in good faith, believes that its enactments are constitutional, and therefore expects them to be upheld after judicial review. These same things have undoubtedly been true of every statute that has ever been held unconstitutional, and it has not stopped courts from holding statutes unconstitutional. To do otherwise would be to abdicate the judicial function to the legislature.

■ A declaration like that found in section 5(d) is entitled to respectful consideration; even without such a declaration, courts should assume that a constitutional result was intended, they should strive to interpret statutes in a way that would render them constitutional, and they should place the burden of demonstrating unconstitutionality upon the challenger. We cheerfully grant the legislature such deference. But if we were to give conclusive effect to such declarations, we might as well expect language saying, "This statute is not subject to judicial review," or "Any court reviewing the constitutionality of this statute shall find it to be constitutional." That is not the law. Labels are not determinative. "Simply put, a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment." *United States v. Halper*, 490 U.S. 435, 448, 109 S.Ct. 1892, 1901, 104 L.Ed.2d 487 (1989). Thus, declarations like that in section 5(d) must be considered with respect, but the judiciary is constitutionally obligated *not* to defer to them.

## II. Driver's license suspension and DWI are not the same offense

The State contends that license suspension and DWI prosecutions are not the same offense because: 1) suspension is not an offense at all, and 2) suspension has an additional element not found in the DWI statute, i.e., that the officer had reasonable suspicion to stop or probable cause to arrest the driver. The 14th Court of Appeals agreed with the first argument in *Voisinet v. State*, 909 S.W.2d 262 (Tex.App.—Houston [14th Dist.] 1995, pet. pending). It held that there is no jeopardy bar because "license suspensions are not criminal statutes," and thus "the proceedings before the administrative judge do not amount to an offense for double jeopardy purposes." *Id.* at 262–63.

## A. Is license suspension an offense?

We agree that license suspension is not created by a criminal statute, but under current law, it does not have to be in order to constitute a jeopardy bar. If the statute punishes, it may create a jeopardy bar, no matter what label is used to describe it; "in making this assessment, the labels 'criminal' and 'civil' are not of paramount importance." *Halper*, 490 U.S. at 447, 109 S.Ct. at 1901. Civil fines under the federal False Claims Act are not "criminal statutes" and not an "offense," but they may be barred if they constitute punishment. *Halper*, 490 U.S. at 438, 109 S.Ct. at 1896. Federal civil suits for forfeiture of property involved in drug offenses are not criminal offenses, but the forfeiture may be barred if it constitutes punishment. *Austin v. United States*, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). A statute imposing a tax is not a criminal offense, but the collection of the tax may be barred by double jeopardy. *Department of Revenue v. Kurth Ranch*, —— U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994).

Both federal and Texas courts have held that jeopardy denotes risk; that the risk described is that traditionally associated with a criminal prosecution; and that labels of convenience like "civil" are not dispositive because it is the substance of the proceeding, not its label or form, that is controlling. *Breed v. Jones*, 421 U.S. 519, 529, 95 S.Ct. 1779, 1785, 44 L.Ed.2d 346 (1975); *Ex parte Tarver*, 695 S.W.2d 344, 350–52 (Tex.App.—Houston [1st Dist.] 1985), *aff'd*, 725 S.W.2d 195, 199 (Tex.Crim.App.1986). Thus, license suspension may create a jeopardy bar, whether labeled an offense or not, if it denotes risk that is traditionally associated with a criminal prosecution, i.e., with actions authorizing criminal punishment to vindicate public justice. *Ex parte Tarver*, 695 S.W.2d at 351 (quoting *Breed v. Jones*, 421 U.S. at 528–30, 95 S.Ct. at 1785–86).

Does license suspension denote that type of risk? It does. The predicate to suspension is that a person with an alcohol concentration of .10% or greater drove or controlled a vehicle in a public place and the officer had reasonable suspicion to stop him. Except for the last element, reasonable suspicion, that is the crime of driving while intoxicated. Moreover, the sanction for failing the breath test, license suspension, is also an automatic consequence of a final conviction for DWI. Art. 6687b, sec. 24(a)(3). Thus, the risk involved in an administrative license suspension is that traditionally associated with a criminal prosecution for driving while intoxicated—it has all the same elements and part of the same punishment.

The opinion in *Voisinet* relies on authority from this Court, *Raitano v. Texas Department of Public Safety*, 860 S.W.2d 549, 551 (Tex.App.—Houston [1st Dist.] 1993, writ denied), for the proposition that license suspensions are not criminal proceedings. In *Raitano*, we wrote that license suspension statutes address the:

> administrative and regulative power vested in the Texas Department of Public Safety which [protects] the lives and property of those using the highways. A driver's license is not suspended for the purpose of visiting additional punishment upon an offender but in order to protect the public against incompetent and careless drivers.

860 S.W.2d at 551. *Raitano* should not control this case because it was not a double jeopardy case. That issue was not before the court, was not considered, and therefore the court did not mention the controlling Supreme Court cases of *Halper*, or *Austin*, which was decided only three days before, or *Kurth Ranch*, decided the next year. The issue in *Raitano* was whether the statute was unconstitutionally vague, and the quotation above was from a 1964 case that, like *Raitano*, did not involve a double jeopardy issue.

The 14th Court of Appeals has held, similar to the United States Supreme Court in *Austin*, that the Texas drug forfeiture statute constitutes punishment and thus may bar prosecution under the double jeopardy clause. *Fant v. State*, 881 S.W.2d 830, 834 (Tex.App.—Houston [14th Dist.] 1994, pet. granted). Moreover, that court has held, like the United States Supreme Court in *Kurth Ranch*, that the Texas controlled substance tax statute is punishment constituting a jeopardy bar. *Stennett v. State*, 905 S.W.2d 612, 615 (Tex.App.—Houston [14th Dist.] 1995,

pet. granted). The rule is clear: labels don't control; substance does. If a statute punishes, it may create a jeopardy bar.

## B. Is license suspension the same offense?

The State next argues that even if license suspension constitutes punishment, it is not for the same offense as DWI because the suspension statute has an additional "element," probable cause for the officer to stop the driver. There is that additional element, but that fact does not help the State.

▌ If the only significant difference between the two statutes is that the suspension statute requires proof of probable cause, then the State has proved DWI while proving its case for license suspension. Thus, DWI is a "lesser included offense" of license suspension because it is "established by proof of the same or less than all the facts required to establish the commission of the offense charged." TEX.CODE CRIM.PROC.ANN. art. 37.09 (Vernon 1981).[4] Accordingly, the two statutes state the "same offense." *See Jeffers v. United States*, 432 U.S. 137, 147–51, 97 S.Ct. 2207, 2214–16, 53 L.Ed.2d 168 (1977) (lesser included offenses are the same offense under *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932)).

▌ The State may also contend that the statutes are not the same because intoxication under the DWI statute may be proved in two ways while intoxication under the license suspension statute may be proved only by showing a .10% alcohol concentration. Under the DWI statute, intoxication is defined as either a .10% alcohol concentration or the loss of the normal use of mental and physical faculties. This does not eliminate the jeopardy problem, however. If the State proves .10% alcohol concentration in the license suspension, it obviously is proving the elements of a DWI case. If, in the DWI case, the State proves the loss of normal faculties, instead of .10% alcohol concentration, it is proving a different *fact*, but it is still proving the same *offense*, DWI, as it did in the license suspension proceeding.[5] Plainly, the State could not prosecute a defendant for the same act of DWI first by proving he drove with a .10% alcohol concentration and then a second time by proving that he simultaneously drove while not having normal mental and physical faculties due to introduction of alcohol. Thus, this difference in the statutes does not allow successive punishments.

## C. License suspension is not the same offense because it is administrative.

▌ Finally, the State relies on cases that hold there is no double jeopardy bar from prosecuting an inmate for a criminal offense, even after administrative disciplinary

4. It seems strange to call DWI a lesser offense than suspension because DWI carries a greater penalty. Thus, DWI would seem to be a "greater included offense," but art. 37.09, entitled "Lesser Included Offenses," says nothing about punishment; none of its four definitions requires that a "lesser" included offense have a lower punishment than the offense that includes it. The Code Construction Act provides, of course, that headings do not "limit or expand the meaning of a statute." TEX.GOV'T CODE ANN. § 311.024 (Vernon 1988). The issue is one of state law only, however; it does not affect double jeopardy analysis because if two separate proceedings both punish the same act, it does not matter which is prosecuted first or which threatens the greater punishment. "[I]f there is a constitutional prohibition on multiple punishments, the order of punishment cannot possibly make any difference." *Kurth Ranch*, —— U.S. at ——, 114 S.Ct. at 1958 (Scalia, J. dissenting); *United States v. Hudson*, 14 F.3d 536, 540 (10th Cir.1994); *accord United States v. Sanchez–Escareno*, 950 F.2d 193, 200

(5th Cir.1991). Finally, we note that unauthorized use of a motor vehicle is a "lesser" included offense of auto theft, even though the penalties may be the same or even less for theft, depending on the value of the stolen auto. *Neely v. State*, 571 S.W.2d 926, 927–28 (Tex.Crim.App. 1978).

5. If the State relied on different facts in the two proceedings, i.e., .10% alcohol concentration in the suspension case and loss of normal faculties in the DWI case, that might be relevant to determine whether the second prosecution was barred by collateral estoppel or by res judicata, but it would not show the absence of double jeopardy. The same is true of differences in the State's burden of proof, i.e., by a preponderance of the evidence in the suspension proceeding and by proof beyond a reasonable doubt in the DWI case. *See United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 362, 104 S.Ct. 1099, 1104, 79 L.Ed.2d 361 (1984).

action has been taken in prison for the same act. *See Mott v. State*, 846 S.W.2d 398 (Tex. App.—Houston [14th Dist.] 1992, no pet.); *Quevedo v. State*, 832 S.W.2d 422, 424 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd); *Prysock v. State*, 817 S.W.2d 784, 785 (Tex. App.—Waco 1991, pet. ref'd). Those cases all preceded the Supreme Court's decisions in *Austin* and *Kurth Ranch*, and our *Quevedo* decision does not mention *Halper*. Since *Mott*, *Quevedo*, and *Prysock* were decided, Justices Scalia and Thomas have stated that *Halper* may in fact create a jeopardy bar in that situation, although arguing that it should not. *Kurth Ranch*, —— U.S. ——––——, 114 S.Ct. at 1958–59 (Scalia, J. dissenting). Thus, *Mott, et al*, do not seem to control this issue, even if they are still good law on that one.

One court held that the double jeopardy clauses do not apply to administrative proceedings. *Burrows v. Texas Department of Public Safety*, 740 S.W.2d 19, 20–21 (Tex. App.—Dallas 1987, no pet.). The *Burrows* court relied for that proposition on *Davenport v. State*, 574 S.W.2d 73, 75 (Tex.Crim. App.1978). This Court criticized *Davenport* and refused to follow it in *Ex parte Tarver*, 695 S.W.2d at ·347–52, and *Davenport* was overruled by the Court of Criminal Appeals when it affirmed *Tarver*. 725 S.W.2d at 199. Thus, the label "administrative" relied on in *Davenport* is no more dispositive than the label "civil" in *Halper, Austin,* and *Kurth Ranch*.

### III. What is the "Holding" in *Halper?*

The holding in *Halper* seems to be stated in the following sentence:

> We therefore hold that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial but **only** as a deterrent or retribution.

490 U.S. at 448–49, 109 S.Ct. at 1902 (emphasis added).[6] Unfortunately, that sentence says the very opposite of the immediately preceding sentence in *Halper,* which declares:

> From these premises it follows that a civil sanction that cannot fairly be said *solely* to serve a remedial purpose, but rather can *only* be explained as *also* serving either retributive or deterrent purposes, is punishment, as we have come to understand the term.

490 U.S. at 448, 109 S.Ct. at 1902 (emphasis added). Will the real "holding" in *Halper* please stand up?

The "holding" sentence says that if a sanction is both remedial and deterrent, then it cannot create a jeopardy bar; the "premises" sentence says that if a sanction is both remedial and deterrent, it can create a jeopardy bar, and to avoid that, the sanction must be "solely ... remedial." We think these two sentences are in irreconcilable conflict.

One could resolve the conflict by relying on the "holding" sentence and by disregarding the previous sentence. We decline to do so for several reasons. First, this Court has previously held that "if the forfeiture does not solely serve a remedial purpose, but also serves as a retributive or deterrent purpose, it is punishment." *Johnson v. State*, 882 S.W.2d 17, 19 (Tex.App.—Houston [1st Dist.] 1994, pet. granted); *accord Fant v. State*, 881 S.W.2d 830, 834 (Tex.App.—Houston [14th Dist.] 1994, pet. granted). Second, we do not think the Supreme Court meant to hold that for a civil sanction to be a jeopardy bar, it must be "only" deterrent or retributive. Few civil sanctions would ever meet that test because all probably have at least some remedial function. Based on its later writing on the exact subject, we think the Supreme Court meant to hold, as it stated in the previous sentence, that a civil sanction that is partly remedial and partly deterrent or retributive can, under appropriate facts, be a jeopardy bar.

■ The first Supreme Court case after *Halper* to interpret a similar issue was *Aus-*

---

6. The opinion at an earlier page states, "[T]he question we face today [is] whether a civil sanction, in application, may be so divorced from any remedial goal that it constitutes 'punishment' for the purpose of double jeopardy analysis." 490 U.S. at 443, 109 S.Ct. at 1899.

*tin.*[7] The *Austin* opinion went out of its way to emphasize not the "holding" sentence in *Halper* but the sentence before it, and the opinion was joined by all nine justices. Although four justices concurred, nine justices joined the following crucial statement in *Austin:*

> Thus, the question is not as the United States would have it, whether forfeiture ... is civil or criminal, but rather whether it is punishment.
>
> *In considering this question, we are mindful of the fact that sanctions frequently serve more than one purpose. We need not exclude the possibility that a forfeiture serves remedial purposes to conclude that it is subject to the limitation of the excessive fines clause. We, however, must determine that it can only be explained as serving in part to punish. We said in Halper that "a civil sanction that cannot fairly be said solely to serve a remedial purpose but rather can only be explained as also serving either retributive or deterrent purposes is punishment, as we have come to understand the term."* ... *We turn, then, to consider whether, at the time the eighth amendment was ratified, forfeiture was understood at least in part as punishment and whether forfeiture* ... *should be so understood today.*

509 U.S. at 610–11, 113 S.Ct. at 2806 (emphasis added).

The Court continued:

> [T]his court has ... consistently ... recognized that forfeiture serves, at least in part, to punish the owner.... We conclude, therefore, that forfeiture[s] ... historically have been understood, at least in part, as punishment.

509 U.S. at 618, 113 S.Ct. at 2810.

The Supreme Court continued to emphasize this precise point in footnote 12 by italicizing the words "in part":

Under *United States v. Halper,* 490 U.S. 435, 448, 109 S.Ct. 1892, 1901, 104 L.Ed.2d 487 (1989), the question is whether forfeiture serves *in part* to punish, and one need not exclude the possibility that forfeiture serves other purposes to reach that conclusion.

509 U.S. at 618, n. 12, 113 S.Ct. at 2810, n. 12 (emphasis in original). It is interesting to note that footnote 12 cited only to page 448 of the official United States reports, not to page 449. The sentence it relies on is wholly printed on page 448 of the official report, while the "holding" sentence begins on page 448, but its vital language is found entirely on page 449. Reading these tea leaves is unnecessary, however, because the *Austin* Court was not yet through emphasizing the "premises" sentence from *Halper* while totally ignoring the "we therefore hold" sentence. It wrote:

> Fundamentally, even assuming that [the forfeiture statutes in question] serve some remedial purpose, the government's argument must fail. "[A] civil sanction that cannot fairly be said *solely* to serve a remedial purpose but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term." *Halper,* 490 U.S., at 448, 109 S.Ct., at 1902 ... In light of the historical understanding of forfeiture as punishment, the clear focus of [the statutes in question] on the culpability of the owner, and the evidence that congress understood those provisions as serving to deter and to punish, *we cannot conclude that forfeiture under [those statutes] serves solely a remedial purpose.*

509 U.S. at 621–22, 113 S.Ct. at 2812 (emphasis added).

The Court went on to emphasize that forfeiture statutes like the one declared unconstitutional in *Austin* "historically have been

---

**7.** *Austin* decided whether a federal civil forfeiture statute violated the excessive fines clause of the Eighth Amendment, which was not a double jeopardy issue, but in order to decide that, the Court first had to decide whether the forfeiture was "punishment." In doing that, it used the test from *Halper,* a double jeopardy case. "[T]he only fair reading of ... *Austin* is that it resolves the 'punishment' issue ... for purposes of the Double Jeopardy Clause as well as the Excessive Fines Clause. In short, if a forfeiture constitutes punishment under the *Halper* criteria, it constitutes 'punishment' for purposes of *both* clauses." *United States v. $405,089.23,* 33 F.3d 1210, 1219 (9th Cir.1994) (emphasis in original), *modified on reh'g,* 56 F.3d 41, *cert. granted,* —— U.S. ——, 116 S.Ct. 762, 133 L.Ed.2d 707 (1996).

understood as serving not simply remedial goals but also those of punishment and deterrents," observing that "a fine that serves purely remedial purposes cannot be considered 'excessive' in any event." 509 U.S. at 622, n. 14, 113 S.Ct. at 2812, n. 14. Even the concurring justices expressly agreed on this point. Justice Scalia, joined by Justices Kennedy, Thomas, and the Chief Justice, wrote:

> However the theory may be expressed, it seems to me that this taking of lawful property must be considered in whole or in part, *see United States v. Halper*, 490 U.S. 435, 448, 109 S.Ct. 1892, 1901, 104 L.Ed.2d 487 (1989), punitive.

509 U.S. at 625, 113 S.Ct. at 2813.

Justice Scalia and the others went even further out of their way to point out that they agreed with the majority that a fine that is partly remedial and partly punitive is a jeopardy bar. He wrote, "Contrary to the court's contention, *ante*, at 618, n. 12, 113 S.Ct., at 2810, n. 12, I agree with it on this point." 509 U.S. at 625, 113 S.Ct. at 2813. The "point" he agreed with from note 12 was the statement that "the question is whether forfeiture serves *in part* to punish, and one need not exclude the possibility that forfeiture serves other purposes to reach that conclusion." 509 U.S. at 618, n. 12, 113 S.Ct. at 2810, n. 12. (emphasis in original).

 In conclusion, we think it would be a mistake to rely on the "holding" sentence from *Halper*. That sentence was more than totally ignored in *Austin*—nine out of nine justices repeatedly restated and emphasized their agreement that a sanction partly remedial and partly punitive/deterrent may constitute a jeopardy bar. Thus, the conclusion from *Austin* seems inescapable: *Halper's*

holding is not stated in the sentence that begins "we therefore hold," but in the previous sentence, which says the exact opposite of the purported holding. Several federal appellate courts agree. *United States v. $405,089.23*, 33 F.3d at 1219, 1221–22; *United States v. Hudson*, 14 F.3d at 540.

If that were all, we would declare the issue closed and go on, but there is more. In *Kurth Ranch*, the Court cited *Halper* and quoted only the "holding" sentence. —— U.S. at ——, 114 S.Ct. at 1945. The *Kurth Ranch* opinion did not mention the "premises" sentence relied on expressly and exclusively by all nine justices in *Austin*. Nor did any justice seem to notice that the two sentences say opposite things.[8] The likely explanation is that there was no reason to rehash the issue—it had been settled unanimously in *Austin*. Thus, the contradictory language apparently unnoticed in *Halper* and conspicuously ignored in *Austin* was, we believe, unintentionally repeated in *Kurth Ranch*. In any event, the issue that was so central in *Austin*, i.e., whether a fine can constitute a jeopardy bar if it is *both* remedial and punitive, was not discussed in *Kurth Ranch*.[9] From this, we conclude that the *Austin* case is still the definitive interpretation of *Halper*. Accord *U.S. v. $405,089.23*, 33 F.3d at 1219, 1221–22. And *Austin* could not be more specific in holding that a civil sanction does not have to be solely deterrent or retributive to be a jeopardy bar—it is enough if it is partly remedial and partly deterrent or retributive.

## IV. Is license suspension at least partly punitive?

 In determining whether the suspension statute is punitive, we will now consider

---

8. Several courts have mentioned the conflict, but resolved it in the State's favor. *Alaska v. Zerkel*, 900 P.2d 744, 756–57 (Alaska App.1995); *North Dakota v. Zimmerman*, 539 N.W.2d 49, 53 (N.D. 1995); *Minnesota v. Hanson*, 532 N.W.2d 598, 600–601 (Minn.App.1995); *Tench v. Virginia*, 21 Va.App. 200, 462 S.E.2d 922, 924 (1995). One resolved it in the defendant's favor, declaring that the State's "position that as long as the sanction serves some remedial goals it does not constitute punishment, is an intentional misrepresentation of the holding in *Halper*....." *Ohio v. Gustafson*, 1995 WL 387619 (Ohio App. 7 Dist., review granted).

9. The only words we have found in *Kurth Ranch* that mention the issue do so indirectly, but in a way that is consistent with *Austin* and thus supports our conclusion: "Here, we ask only whether the tax has punitive characteristics that subjects it to the constraints of the Double Jeopardy Clause." —— U.S. at ——, 114 S.Ct. at 1945. In other words, if the tax has punitive characteristics that subject it to the Double Jeopardy Clause, the tax is not excused by the fact that it may have some remedial characteristics as well.

the same factors considered in *Halper, Austin,* and *Kurth Ranch.* These include whether license suspension is historically understood as punishment, the statute's focus on the driver's criminal culpability, and the evidence that the legislature understood these provisions as serving to deter and to punish. *Austin,* 509 U.S. at 621, 113 S.Ct. at 2812.

## A. The Statute's Focus on Criminal Culpability

The statute focuses exclusively on the driver's criminal culpability. Like the forfeiture statute in *Austin,* it is tied solely to the commission of the crime of DWI. Moreover, the suspension statute contains an "innocent driver" defense, similar to the "innocent owner defense" in *Austin.* 509 U.S. at 618, 113 S.Ct. at 2810. Under article 6687b-1, sec. 5(d), if the DWI case results in acquittal, a suspension shall not be imposed, and if already imposed, it shall be rescinded and the Department of Public Safety shall remove it from the driver's record. The statute even grants first offenders a credit from the administrative suspension towards any license suspension resulting from a related DWI prosecution, while repeat offenders are denied the credit. Art. 6687 b-1, sec. 6(c) (Vernon Supp.1995). As the Supreme Court said in *Austin,* "These exemptions serve to focus the provisions on the culpability of the owner in a way that makes them look more like punishment, not less." 509 U.S. at 619, 113 S.Ct. at 2810-11. The statute's enhancement provisions also resemble a criminal statute. If the driver has previously been arrested and refused to be tested or tested .10% or greater, the suspension increases from 60 to 120 days. Art. 6687b-1, sec. 6(b). If she has been previously convicted of DWI, the suspension increases to 180 days. *Id.* Finally, the same sovereign that criminalizes DWI also suspends the license, a factor deemed "significant" in *Kurth Ranch,* ― U.S. at ―, n. 22, 114 S.Ct. at 1947, n. 22.

We conclude that the statute's complete focus on the driver's criminal culpability marks it as at least partly punitive/deterrent.

## B. The Legislative History

The legislative history shows that the legislature understood the provisions as serving at least in part to deter and punish, but whether we may consider the legislative history is yet another controversial issue. The Code Construction Act provides that legislative history may be considered even if a statute is not ambiguous. TEX.GOV'T CODE ANN. § 311.023 (Vernon 1988). The Court of Criminal Appeals, however, has held that in criminal cases, legislative history should not be considered unless the statute is ambiguous or the plain text leads to an absurd result. *Boykin v. State,* 818 S.W.2d 782, 785-86 (Tex.Crim.App.1991). No one contends this statute is ambiguous or its result absurd. The *Boykin* holding was questioned in *State v. Warner,* 915 S.W.2d 873 (Tex. App.—Houston [1st Dist.] 1995, pet. filed). We need not choose between these authorities, however. The United States Supreme Court has spoken. In determining whether a statute violates the Double Jeopardy Clause, legislative history is to be considered. *Austin,* 509 U.S. at 619-22, 113 S.Ct. at 2810-12. Thus, we press on.

Legislative history shows that the suspension statute was understood and intended by legislators, at least in part, as a measure to deter and punish drunk drivers:

**SB 1/HB 215—House Criminal Jurisprudence Committee, 4/7/93 Greenberg:**

Thank you Mr. Chairman and Members ... The Bill before us is the administrative license revocation, House Bill 215, also fondly known as ALR ... *ALR also will deter those who drink and drive* before they have a crash and hurt themselves or someone else. According to a federal study, 87.7% of intoxicated drivers involved in fatal crashes did not have a previous drunk driving conviction in the past three years. ALR will *deter* those who drink and drive and take risks because they know they face *certain punishment* if they are caught. Also, ALR is one *sanction* that has proven to reduce crime without increasing the population of our overcrowded prisons. Something that I know this Committee is well aware of. The sig-

nificant problem that we have in adding to the rolls of the prisons, and this will not do that ... And finally, *ALR provides uniform punishment standards* with no discretion given to the administrative law judge as to the length of the suspension.... This for instance prevents the magistrate from giving *harsher punishment* to minorities and *lighter punishment* to anglos. They have no discretion.

(Emphasis added.)

### SB1, Second Reading 1, House Floor, 5–18–93:

### Tape 158

**Woolens:**

Mr. Speaker and Members. Senate Bill 1 is known as ALR [sic] or administrative license revocation. *The main reason for passing this is that it acts as a major deterrent for people driving drunk* ... Number one. It prohibits probated suspension entirely. Number two. It provides for suspensions of licenses of persons who are arrested for DWI. Number three. It increases the length of suspicions [sic] of persons who refuse to take the test. Number four. It provides for a prompt resolution of the suspension matters. Number five. It toughens the occupational license provisions by requiring some alcohol testing ...

### SB1, Second Reading II, House Floor, 5–25–93:

### Tape 191A

[T]he Department of Public Safety is supporting of the bill with the committee amendments, and I would like to read to you briefly a little note that they wrote. They said that the bill will provide a *valid means to deter drunk driving* and to save lives.

**Campbell:** Exactly. And what I would like to make ...

**Woolens:** We want drunk drivers off the road.

**Campbell:**

Chairman Janelle, again my intent is to, I want to make sure that this piece of legislation is an effective tool in removing the drunk driver off the road in Smith County as it would in Dallas, Travis or Harris County.

**Denver:**

Rob, I agree with you that we need to take drunk drivers off the road.

(Emphasis added.)

### C. The Historical Understanding of Suspension as Punishment

██ To show the historical understanding of suspension as punishment, appellant cites the December 1982 interim report by the Presidential Commission on Drunk Driving: [10]

Suspension or revocation of driver licenses can be an *effective deterrent* to driving while under the influence. Studies in California and Washington show that license suspension was more effective than assignment of violators to alcohol education and/or treatment programs. If suspensions are imposed consistently and are highly publicized, this *sanction* can play an important role in *reducing driving under the influence.*

(Emphasis added.)

### Recommendation

5.1 *Administrative Per Se License Suspension*

\* \* \* \* \* \*

Some States have begun to use innovative methods to establish *swift and certain penalties* for drunk driving. In Minnesota, West Virginia, Iowa, and Delaware, any driver registering above 0.10 AC has his or her license automatically suspended for 90

---

10. This text and the legislative history above are taken from appellant's brief. The State has not challenged its accuracy. The same legislative history is cited in other cases before this panel, and the State has not challenged its accuracy in those cases.

days (or more) regardless of the subsequent disposition of his case. If he or she refuses the test, his or her license is suspended for 180 days. This is a *swift and certain sanction* which significantly adds to the *general deterrent effect* of the control system.

(Emphasis added.)

Moreover, the United States Supreme Court, referring to license suspension statutes for refusing breath tests, has stated, "[T]he very existence of the summary sanction of the (suspension) statute serves as a deterrent to drunken driving." *Mackey v. Montrym*, 443 U.S. 1, 18, 99 S.Ct. 2612, 2621, 61 L.Ed.2d 321 (1979).

We agree with Judge Randall of Minnesota that "the mantra of the State, that implied consent is remedial and therefore not double punishment, has to be disregarded if we are to remain honest with our citizens.... In truth, the so-called remedial sanctions do their job of 'remediating' by punishing drivers." *Minnesota v. Hanson*, 532 N.W.2d at 604 (Randall, J., concurring). *Accord*, Cohen, *The Case for Admitting Evidence of Refusal to Take a Breath Test*, 6 Tex.Tech. L.Rev. 927, 934–36 (1975).

We conclude that the historical understanding is that suspension is at least partly punitive/deterrent.

## V. What does it all mean?

If we were to stop now, we would have to conclude that appellant is entitled to relief because we have resolved all of the inquiries required by *Halper* in his favor. Nevertheless, even this analysis is ultimately unsatisfying because its mechanical operation leads to an undesirable result and gives too little attention to the concerns that the Supreme Court repeatedly expressed in *Halper*, *Austin*, and *Kurth Ranch*. We prefer the candid legal realism of Judge Randall:

The better, and the more honest argument, is that across this entire country there are thousands of civil sanctions/punishments that are imposed in virtually every walk of life and yet do not automatically bar any later criminal prosecution, unless the *Hal-*

*per* rare case test of excessive and harsh retribution is met.

The countless federal and state agencies that monitor work place rules, OSHA, clean air and water standards, environmental concerns, professional conduct, etc. invariably have within their power the ability to fine, suspend, disbar and shut down people or entities that run afoul of a civil law. If all such civil punishment, and I will call them punishments, led to an absolute bar to any later criminal prosecution when the facts warranted, it would lead to wholesale confusion and likely a monstrous result. For modest infractions, the government might choose to start charging all its citizens criminally, for fear it would be barred later....

I cannot read into *Halper*, *Kurth Ranch*, and the other cases both parties cite, a broad sweeping holding so that the *Halper* court meant to knock out every implied consent statute, and every agency and governmental sanction around the country, in those tens of thousands of cases, including but not limited to, drunk driving. I can read into *Halper* a warning to state and federal agencies responsible for law enforcement that when you overreach with your civil punishment, you will be limited to that punishment, and later chance to punish criminally will be barred....

*Minnesota v. Hanson*, 532 N.W.2d at 604–605 (Randall, J., concurring).

We believe that we extend the rule in *Halper* at our peril. In *Halper*, *Austin*, and *Kurth Ranch*, the government's actions were deemed punitive because they took away property that far exceeded any direct harm to the government, and thus they could not be characterized as restitution. The forfeiture and tax statutes in *Austin* and in *Kurth Ranch* were not even designed as restitution statues; unlike the statute in *Halper*, any relation they bore to the government's actual damages was wholly coincidental. In *Halper*, the Court held that a civil fine would not be double jeopardy if it was designed to constitute "rough remedial justice" and if its effect was not "exponentially greater than the amount of the fraud, and ... also many times the amount of the Gov-

ernment's total loss," 490 U.S. at 445, 109 S.Ct. at 1900, and not "so extreme and so divorced from the Government's damages and expenses as to constitute punishment." *Id.* 490 U.S. at 442, 109 S.Ct. at 1898. In *Halper,* the $130,000 penalty was "more than 220 times greater than the Government's measurable loss...." *Id.* 490 U.S. at 439, 109 S.Ct. at 1897. This was viewed as a "rare" scenario of gross overreaching, the Court declaring, "What we announce now is a rule for the rare case, the case such as the one before us, where a fixed penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused." *Id.* 490 U.S. at 449, 109 S.Ct. at 1902.

License suspension is a fixed penalty provision, but appellant is not a prolific offender, nor is the sanction overwhelmingly disproportionate to the damages he has caused. Rather, we view it as a measured and appropriate response.

In *Austin,* the government seized an automobile body shop and a mobile home because they were the site of a two-gram cocaine sale and a "small amount" of marijuana. 509 U.S. at 605, 113 S.Ct. at 2803. Moreover, the inherently "dramatic variations" in the value of the forfeitable property under the statute in *Austin* showed that the forfeiture statute had "absolutely no correlation to any damages sustained by society or to the cost of enforcing the law." *Id.* 509 U.S. at 621, 113 S.Ct. at 2812. In this case, we have no dramatic variations—appellant has but one license to lose to his state—and he can get it back.

In *Kurth Ranch,* a tax of $181,000 on 1811 ounces of marijuana was considered punishment. Part of this tax was equal to eight times the market value of part of the marijuana. —— U.S. at ——, n. 12, 114 S.Ct. at 1943, n. 12. The tax as a whole was 400 percent of the marijuana's market value. *Id.* —— U.S. at ——, n. 17, 114 S.Ct. at 1946, n. 17. Finally, the tax was "exceptional" because it was levied on goods the taxpayer neither owned nor possessed when the tax was imposed. —— U.S. at ——, 114 S.Ct. at 1948. These factors are not present in this case.

The 60–day license suspension in this case is unlike any of these property takings. It is not grossly disproportionate to the seriousness of the crime. It is "rough remedial justice" for one reasonably suspected of driving drunk.

We believe that *Halper, Austin,* and *Kurth Ranch* are "fact" cases. The government lost because it overreached. A 60–day suspension is not overreaching, and an innocent defendant could shorten even that time by obtaining a speedy trial and winning an acquittal.

## VI. The Future

Even though state and federal governments have lost three out of three times recently on these issues in the United States Supreme Court, the justices have grown increasingly restive with the rationale and the results of their opinions. In *Halper,* for example, eight justices joined the majority opinion; one justice wrote a brief but supportive concurring opinion. In *Austin,* all justices joined the judgment, but four concurred. In *Kurth Ranch,* four justices dissented. One, Justice O'Connor, declared, "The consequences of this decision are astounding." —— U.S. at ——, 114 S.Ct. at 1955. Two more, Justices Scalia and Thomas, want to "put the *Halper* genie back in the bottle," i.e., overrule *Halper.* —— U.S. ——, 114 S.Ct. at 1959. And one of the five justices in the majority in *Austin* and in *Kurth Ranch,* Justice Blackmon, has retired. Our conclusion is that the United States Supreme Court is unlikely to extend *Halper,* a rule intended for a rare case, to the very routine situation of license suspension for DWI.

## Conclusion

We agree that it is difficult to imagine that double jeopardy exists only where excessive punishment has been imposed. Nothing in the Double Jeopardy Clause says that a second punishment can be imposed if the first punishment wasn't too harsh. Yet, to us, that alone explains the judgment in *Halper*— it is really an excessive fines case under the Eighth Amendment posing as a double jeopardy case, as Justice Scalia has argued.

*Kurth Ranch,* —— U.S. at ——, n. 2, 114 S.Ct. at 1958, n. 2.

Faced with a host of imperfect rationales, including our own, we choose to rely on one that, we think, recognizes *Halper's* intent without vastly extending its reach and thus threatening the viability of dozens of carefully crafted state administrative schemes on which we all depend for our safety.

We overrule appellant's two points of error and affirm the ruling of the trial court denying habeas corpus relief.